UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES KIMBELL, )<br>and others similarly situated, )<br> )<br>v. )<br> )<br>DYNAMIC STRATEGY, INC. )<br>d/b/a BUDGET BRAKES ) | No. 3:08-1175<br>JUDGE CAMPBELL |

MEMORANDUM

I. Introduction

Pending before the Court is Plaintiff's Motion For Approval Of 29 U.S.C. § 216(b) Notice And Consent Forms And To Order Disclosure Of Current And Former Employees (Docket No. 13). The Defendant has filed an Opposition (Docket No. 16) to the Motion, and the Plaintiff has filed a Reply. (Docket No. 18).

For the reasons set forth below, the Court GRANTS Plaintiff's Motion For Approval (Docket No. 13), on the terms and conditions set forth below.

II. Conditional Certification and Court-Supervised Notice

Plaintiff James Kimbell, a former employee of Defendant Dynamic Strategy, Inc. d/b/a Budget Brakes, has brought this action under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. (hereinafter "FLSA") for himself and in a representative capacity as a collective action on behalf of others "similarly situated" under 29 U.S.C. § 216(b). Plaintiff has filed a proposed notice to be sent to putative class members, and seeks an order directing the defendant to produce a list of names of current and former employees, as well as other relief.

Section 207(a) of the FLSA generally requires that employers pay employees specific hourly rates for up to 40 hours per week and pay overtime compensation of one and one-half times the regular rate for hours worked in excess of 40 hours. 29 U.S.C. § 207. The FLSA specifically provides for enforcement of its provisions through collective actions brought by an employee on his own behalf and all those who are "similarly situated" utilizing an "opt-in" procedure:

> . . . An action to recover the liability [for violations of Sections 206 or 207] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. . .

29 U.S.C. § 216(b).

The Sixth Circuit has adopted a bifurcated certification approach for deciding whether a suit can proceed as a collective action. Comer v. Wal-Mart, 454 F.3d 544, 545-47 (6th Cir. 2006). The first stage, the conditional certification/notice stage, takes place at the beginning of discovery, and requires the court to determine whether notice of the pending action and an opportunity to "opt-in" should be given to potential class members. Id. At this stage, the plaintiff is required to show that his or her position and those of the group he or she seeks to represent are "similar, not identical" and needs only to make a "modest factual showing." 454 F.3d at 547. The court's review at this stage "typically results in conditional certification of a representative class." Id. If the plaintiff satisfies the standard for conditional certification, the statute authorizes the court to issue court-supervised notice to potential class members. Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

Once discovery has been completed, the defendant may file a motion to decertify the class. Comer, 454 F.3d at 547. At that stage of the case, the court has more factual information upon which to base its decision, and therefore, the court applies a higher standard to determine whether the class is similarly situated. Id.

In an affidavit filed in support of the pending Motion, Plaintiff Kimbell states that during his employment with the Defendant, at three separate locations in Nashville, the Defendant violated the FLSA by automatically deducting time for employees' lunch breaks, whether or not the employee had the opportunity to actually take time off for the lunch break. (Affidavit of James Kimbell, at ¶¶ 2, 4 (Docket No. 14-3)). Plaintiff alleges that the Defendant owes him overtime pay for this work time. Id. Plaintiff states that he complained to store management about the practice, but was told that nothing could be done about it. (Kimbell Affidavit, at ¶ 7).

Plaintiff has also filed the affidavit of former employee Shane Black, who states that he worked for the Defendant at three separate locations in Tennessee. (Affidavit of Shane Black, at ¶ 2 (Docket No. 14-5)). Mr. Black states that during his employment, he initially worked as a laborer on cars, but later became a salaried assistant manager. (Id. at ¶ 4). Mr. Black states that the Defendant had a practice of automatically deducting time for hourly employees' lunch breaks, whether or not the employee had the opportunity to take off during the lunch break. (Id., at ¶ 5). According to Mr. Black, this occurred at all three locations where he worked. (Id.) Mr. Black indicates that in his capacity as assistant manager, he was never told to make sure hourly employees were paid for the time they worked during their lunch break. (Id., at ¶ 6). Mr. Black states that he spoke with his superiors about this practice, but was told that "this was just part of the business." (Id., at ¶ 9). Mr. Black has attached certain time records to his affidavit, which he

3

says indicates that, except for a period of time in February, 2008, the Defendant clocked employees out and back in at a set time for the lunch break. (Id., at ¶ 10).

Plaintiff has also filed the affidavit of former employee William Matlock, who states that he worked for the Defendant in three separate locations in the Middle Tennessee area as a store manager or service manager. (Affidavit of William Matlock, at ¶ 2 (Docket No. 14-6)). According to Mr. Matlock, the Defendant had a practice of automatically deducting time for hourly employees' lunch breaks, whether or not the employee had an opportunity to take the lunch break. (Id., at ¶ 5). Mr. Matlock indicates that when told about the extra time worked by employees, management refused to add the time to employees' pay "on the overwhelming majority of those occasions." (Id., at ¶ 8). Mr. Matlock states that he spoke with one of the owners of the company, Michael Palozola, about the problem, and told him that the company was going to get in trouble for this practice. (Id., at ¶ 6). According to Mr. Matlock, Mr. Palozola said that he would "cross that bridge when I come to it." (Id.)

Another affiant, Joseph Cook, states that he worked as a store manager for the Defendant at locations in Middle Tennessee for approximately 22 months. (Affidavit of Joseph Cook, at ¶ 2 (Docket No. 14-7)). Mr. Cook indicates that during his tenure, the Defendant had a practice of automatically deducting time for hourly employees' lunch breaks whether or not the employee actually took the lunch break. (Id., at ¶ 5). According to Mr. Cook, he also spoke to Mr. Palozola about the problem, but states that nothing was ever done to remedy the problem. (Id., at ¶ 6). Mr. Cook states that he made handwritten notes on certain payroll records and sent them to corporate headquarters, but the company refused to add the time for the employee "on the overwhelming majority of these occasions." (Id., at ¶ 8).

4

Finally, Plaintiff has filed a declaration of Keith Danbar (Docket No. 14-4), in which Mr. Dunbar states that while working for the Defendant, his employer clocked him out for an hour when he was generally only able to take a lunch break of about 10-15 minutes. Mr. Danbar does not state the location where he worked for the Defendant.

In his proposed notice, the Plaintiff describes the class as "all hourly employees of Dynamic Strategies or Budget Brakes who have worked for the company during the last three years." (Docket No. 14-1, page 1 of 4).

Defendant contends that the Court should not conditionally certify the class because the individuals in the potential class are not "similarly situated" to the Plaintiff. In support of its opposition, Defendant has filed the affidavit of Steve Ryan, an owner and the President of Dynamic Strategy, Inc. ("DSI"). (Affidavit of Steve Ryan, at ¶ 2 (Docket No. 17)). According to Mr. Ryan, DSI has been in business for approximately five years, and is engaged in the business of providing employees and related payroll services to BBMCS, Inc. d/b/a Budget Brakes ("Budget Brakes"). (Id., at ¶ 2). Mr. Ryan indicates that Budget Brakes is in the business of providing automotive repair services, and operates at ten store locations in Tennessee. (Id., at ¶ 5). The company staffs each store location, according to Mr. Ryan, with three technicians, an assistant store manager, and a store manager. (Id., at ¶ 6). The technicians are the individuals who perform the automotive repair services, and are compensated on an hourly basis. (Id.)

Mr. Ryan states that employee work time is entered at each store location through the use of a time clock. (Id., at ¶ 8). For almost all of the previous three years, Mr. Ryan indicates, this timekeeping system was programmed to automatically clock out employees for 45 minutes to one hour for their lunch period. (Id.) According to Mr. Ryan, the only exception to this

5

automatic deduction was in February, 2008, when the system was being updated and the default clock out setting was not set. (Id.)

Mr. Ryan states that weekly timesheets are generated by the timekeeping system and are then reviewed and signed by both the employee and the store manager, "with any corrections being noted on the copy." (Id., at ¶ 9). Mr. Ryan indicates that the reviewed and edited, if necessary, timesheets are then set to the DSI corporate office for payroll processing. (Id.)

Mr. Ryan states that DSI prepared and updates a Corporate Handbook, or employee manual, for Budget Brakes, which includes the various policies applicable to DSI employees working at the Budget Brakes store locations. (Id., at ¶ 3). According to Mr. Ryan, all employees are provided with a copy of the Handbook at the commencement of their employment. (Id., at ¶ 10). Attached to Mr. Ryan's affidavit are acknowledgments signed by the Plaintiff, William Matlock, Shane Black and Joey Cook indicating receipt of the Handbook. (Id., at ¶ 10; Docket No.17-2).[1]

Mr. Ryan states that the Handbook contains a section describing the company's policy about meal periods, which provides as follows:

280 MEAL PERIODS

All full-time employees are provided with one meal period of 45 minutes in length each workday. This meal period will be automatically deducted from your time card. The employee and the manager will schedule meal periods to accommodate operating requirements. In the event that you do not take a meal break during the day please inform your manager that you were unable to take a

---

[1] The acknowledgment pages indicate that the Plaintiff worked at a Budget Brakes store in Nashville; that Mr. Matlock worked at two different stores in Nashville and one unspecified store location; that Mr. Cook worked at an unspecified store location; and that Mr. Black worked at two Nashville stores, and one Clarksville store. (See Ryan Affidavit, at ¶ 5 (list of store locations and numbers); Docket No. 17-2).

6

> break. Your manager will edit the time sheets to reflect no meal period or adjust
> the time card to reflect the actual meal period taken. Employees will be relieved
> of all active responsibilities and restrictions during meal periods and will not be
> compensated for that time. At the end of the week the manager and the employee
> will review the time card together before they are submitted to the payroll
> department. In the event you and the manager disagree about a time card please
> call the office and talk to the payroll department or call Steve at . . . or Michael at
> . . .

(Docket No. 17-1, page 4 of 4 (phone numbers omitted)).[2]

Mr. Ryan has also attached to his affidavit certain timesheets of various employees supervised by Mr. Matlock, and other timesheets of various employees supervised by Mr. Cook, which contain certain handwritten changes to hours listed on printed timesheets. (Exhibits C and D to Ryan Affidavit (Docket Nos. 17-3, 17-4). For example, one of the timesheets approved by Mr. Matlock adds an hour to the time listed with a handwritten note "No lunch." (Docket No. 17-3, page 3 of 15). Mr. Ryan also attaches certain payroll records for the Plaintiff. (Docket No. 17-5).

Finally, Mr. Ryan states that DSI's payroll practices at budget Brakes' Chattanooga area stores were examined by the United States Department of Labor during the summer of 2008, and no violations were found and no unpaid wages were assessed against DSI. (Ryan Affidavit, at ¶ 14).

Section 203(g) of the FLSA defines "employ" to include "to suffer or permit to work." 29 U.S.C. § 203(g). The Department of Labor regulation explaining this provision states:

---

[2] The excerpt quoted above is taken from the copy of the Handbook attached to Mr. Ryan's affidavit. Mr. Ryan's affidavit quotes a similar excerpt in his affidavit as having been included in the Handbook used by Kimbell, Matlock, Shane and Cook. (Ryan Affidavit, at ¶ 10). That excerpt does not include the first two sentences set forth above, and the last sentence set forth above is replaced with the following: "Store managers are responsible for working with employees to edit timesheets to reflect that meal periods are accurately reflected on time sheets." (Id.)

7

> Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time.

29 C.F.R. § 785.11. Another regulation places the burden of controlling "work time" on management:

> . . . [I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13. The regulations also specifically address whether a meal period is compensable:

> (a) Bona fide meal periods. Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

29 C.F.R. 785.19. See also Jones-Turner v. Yellow Enterprise Systems, 2007 WL 3145980 (W.D. Ky. Oct. 25, 2007).

The Defendant does not dispute that hourly workers must be compensated for missed meal breaks. The Defendant does contend, however, that in this case, hourly workers were compensated for their missed meal breaks through handwritten corrections to printed timesheets.

8

The record before the Court at this stage of the proceeding, however, indicates that although the Defendant had a written policy in place to ensure that time records were edited to reflect missed meal periods, this policy was ignored on numerous occasions. The Plaintiff has presented affidavits from individuals with experience both as hourly workers and in management positions indicating that there was a regular practice of failing to account for missed meal periods. Accordingly, the Court concludes that the proof before the Court satisfies the "modest factual showing" needed to determine that the Plaintiff is similarly situated to other hourly employees who worked for the Defendant during the three years prior to the date the Complaint was filed.

The Court is not persuaded, however that the Plaintiff has shown he is similarly situated to hourly workers employed at locations outside the Middle Tennessee area. None of the proof offered by the Plaintiff directly alleges FLSA violations at Defendant's store locations in Chattanooga, Knoxville or other areas outside Middle Tennessee.

Accordingly, the Plaintiff is conditionally certified to represent and send notice of this action to all hourly employees who have worked for the Defendant at store locations in Middle Tennessee at any time from December 9, 2005 to December 9, 2008 (the three-year period prior to the date the Complaint was filed).[3] On or before June 26, 2009, Defendant shall provide Plaintiff with a list of names, last known addresses and telephone numbers for all employees defined above.

---

[3] The statute of limitations, in an FLSA case, is two years, unless the defendant's conduct was willful, in which case the period is extended to three years. 29 U.S.C. § 255(a). Plaintiff's Complaint alleges that Defendant's actions were willful. (Docket No. 1, at ¶ 15). Therefore, the Court concludes that the notice period should be three years prior to the date the Complaint was filed. The Court is not making any findings, however, as to the statute of limitations issues.

Case 3:08-cv-01175   Document 19   Filed 06/12/09   Page 9 of 10 PageID #: 167

The Defendant shall file any objections to the Plaintiff's proposed notice and consent form (Docket Nos. 14-1, 14-2) on or before June 19, 2009, and the Plaintiff shall file any reply on or before June 26, 2009. Plaintiff has also requested that notice be posted at Defendant's locations; that the statute of limitations for the putative class be tolled; and that the consent forms be deemed "filed" on the date postmarked. Defendant shall also file any objections to this requested relief on or before June 19, 2009.

The Court expresses no opinion at this stage of the proceeding as to whether the members of the putative class who will be sent notices are, in fact, similarly situated to the Plaintiff.

It is so ORDERED.

                                                    TODD J. CAMPBELL
                                                   UNITED STATES DISTRICT JUDGE